UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THEODORE AVGERINOS,

          Plaintiff,

    v.

PALMYRA-MACEDON CENTRAL SCHOOL DISTRICT, DR.
ROBERT IKE, SUPERINTENDENT OF SCHOOLS, In His
Individual and Official Capacity, DIRECTOR OF
HUMAN RESOURCES PAUL W. KENYON, In His
Individual and Official Capacity,

          Defendants.
_____

08-CV-6572

**DECISION
and ORDER**

## INTRODUCTION

Plaintiff, Theodore Avgerinos ("plaintiff"), in his complaint against defendants Palmyra-Macedon Central School District, (the "District"), DR. Robert Ike, Superintendent of Schools, In His Individual and Official Capacity ("Dr. Ike"), Director of Human Resources Paul W. Kenyon, In His Individual and Official Capacity ("Kenyon")[1] (collectively "defendants") alleges five causes of action. The first cause of action alleges age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq.* ("ADEA"), the second cause of action alleges age discrimination in violation of the New York State Human Rights Law, Executive Law §290 *et seq.* ("NYSHRL"), the third cause of action alleges libel *per se* in violation of New York State Law and *prima facie* tort, the fourth cause of action involves a First Amendment retaliation claim and the fifth cause of action seeks punitive damages against Kenyon and Dr. Ike.

---

[1] Both Kenyon and Dr. Ike are referred to as "Individual Defendants."

Defendants move to dismiss plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, pursuant to Rule 12(c) for judgment on the pleadings and Rule 56 for summary judgment. Plaintiff opposes defendants' motion and has filed a cross-motion pursuant to Rule 56(f) arguing that plaintiff has not had reasonable opportunity to conduct discovery on substantive issues relating to the defendants' motion. For the reasons set forth below, defendants' motion to dismiss plaintiff's Complaint is granted and plaintiff's cross-motion pursuant to Rule 56(f) is denied.

## BACKGROUND

### I.   Factual Background

Unless otherwise noted, the following facts are taken from plaintiff's Complaint, including documents incorporated by reference or upon which plaintiff relied in drafting the Complaint.[2] Plaintiff is a 62-year-old male with an extensive teaching and administrative background. See Complaint ("Com."), ¶11. In addition, the plaintiff maintains that he holds a Bachelor of Arts degree, which he received in 1968 and a Master's degree, which he received in 1973. See id., ¶12. Plaintiff also alleges that from 1968 to 2005, he worked in various school districts in a variety of capacities including, but not limited to, school administrator, interim principal, high school

---

[2] For purposes of this motion, the factual allegations contained in plaintiff's complaint are taken to be true.

principal, guidance counselor and teacher. See id., ¶13.[3] Moreover, plaintiff maintains that he holds certifications as a school district administrator, school administrator, supervisor, guidance counselor, secondary social studies teacher, and driver education teacher. See id., ¶14. Plaintiff alleges that during the entire tenure of his numerous educational positions, plaintiff was a stellar employee who received many recommendations and certifications. See id., ¶15.

In September 2007, plaintiff moved to the Rochester, New York area and settled in Macedon. See id., ¶18. Plaintiff claims he was encouraged by friends who worked in the District to apply as a substitute teacher and/or administrator. See id., ¶19. In October 2007, plaintiff called the District's Human Resources office and spoke to a woman named Ms. Randall and asked her to send him an application for substitute teaching. See id., ¶21. Plaintiff alleges that he filled out the application form and applied for employment with the District in October 2007 by submitting the application form and various other documents to the District. See id., ¶22.[4] Moreover, he was advised that he could expect his application would be processed in time for the November 13, 2007 Board of Education

_____

[3]From 1973-2001, plaintiff worked in teaching/administrative positions for the Schalmont Central School District. Plaintiff retired from that district in October 2001 after almost 30 years of service. See id., ¶16. From 2001-2005, plaintiff took positions with other school districts in administrative positions on an interim basis. See id., ¶17.

[4] Plaintiff alleges that he brought the application form to the Human Resources office in late 2007. At that time he was asked to produce two forms of identification. Plaintiff claims he produced his New York State driver's license and a copy of a recent letter from the Social Security Administration confirming his recent change of address to Macedon, New York. In addition to this application, plaintiff alleges he provided a cover letter, recommendations, proof of prior security clearance, and his resume. See id., ¶22.

meeting. See id., ¶23. The plaintiff was also informed that in addition to applying for positions at the District, he could apply for a substitute teaching position through the substitute teacher service at the Wayne-Finger Lakes BOCES. See id., ¶23.

The plaintiff contacted the Human Resources office several times in December 2007 regarding his application for employment with the District. See id., ¶24. On those occasions, the plaintiff was informed that the application was being processed. In early December 2007, he was informed that his application was going to be processed by the Board of Education at the December 2007 meeting. See id. When plaintiff had not heard back from the District regarding his application, he called again at the end of December 2007. See id., ¶25. At that time the District apologized and informed plaintiff that his application would be submitted for the January 2008 meeting of the Board of Education. See id. On or about February 5, 2008, the plaintiff contacted the Human Resources office again and he was informed by Ms. Randall that she would have to research the status of his application as to why it had not been submitted and that she would get back to him. See id., ¶26.

Plaintiff contacted the Human Resources office again on February 7, 2008 and was informed that he would have to speak with Paul Kenyon, the Director of Human Resources because there were issues with his application. See id., ¶27. However, plaintiff was told he could not speak with Kenyon at that time as Kenyon was about to leave

4

the office. See id. The plaintiff admits in his Complaint that the he became "very frustrated" that he could not get a simple response from the District concerning his application that he hand-delivered in October 2007. See id., ¶28. Plaintiff indicated to Ms. Randall that if he did not hear from the District concerning his application, his next phone call was going to be directed to the Superintendent of Schools, Dr. Ike, if not the State Department of Education. See id.

On February 8, 2008, Kenyon sent a letter to the plaintiff, advising him for the first time that he had not completed the application correctly, had insufficient documentation, and further, that he had engaged in rude, menacing and threatening behavior in the phone conversation with Ms. Randall in the Human Resources office. See id., ¶¶29-30.[5] In addition, the District also sent the letter to the Wayne-Finger Lakes BOCES who manages the District's substitute teaching service, as well as the BOCES District Superintendent who represents the State Education Department in the District's region. See id., ¶32. Subsequently, the plaintiff contacted the School Superintendent, Dr. Ike, by e-mail correspondence on February 11, 2008. See id., ¶33. Dr. Ike responded and again advised the plaintiff that his conduct was unprofessional and not in keeping with the District's standards. See id. Plaintiff claims that because of the

---

[5] Plaintiff alleges that Kenyon indicated in the letter that Plaintiff's application demonstrates a "lack of attention to detail and ability to follow instructions" and that plaintiff's "inability to follow instructions or lack of concern in completing the application properly indicates a deficiency in this area." See id., ¶29. Plaintiff also claims that Kenyon falsely called his telephone conversation with Mr. Randall "rude and menacing" and that his behavior was "threatening and menacing." See id., ¶30.

defendants' actions, he has been precluded from finding work in his profession in Western New York. See id., ¶34.

## II. **Procedural Background**

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on or around May 12, 2008, alleging a violation of the ADEA. However, on or about September 19, 2008, the EEOC dismissed the plaintiff's charges because of plaintiff's failure to establish a violation of the statute, and issued a Dismissal and Notice of Right's letter. Plaintiff commenced this action in Federal Court by filing the Complaint on December 18, 2008. Plaintiff claims that defendants failed to hire him, notwithstanding his prolific experience and educational profession, due to his age and because of malice, as demonstrated by its distribution of a letter to the entire school district and the State of New York, which ended his employment opportunities in his profession in Western New York. See id., ¶35. Defendants contend that the Complaint does not contain any allegations that the defendants made any remarks of a discriminatory nature to the plaintiff relating to his age. Moreover, the plaintiff has not alleged that any other individual was denied employment opportunities on the basis of age or that any other individual employed by the District was treated in an unfair and discriminatory manner on the basis of their age.

Further, plaintiff alleges a cause of action for a violation of the NYSHRL on the basis of age discrimination. Defendants contends

that a cause of action for age discrimination under NYSHRL as against a school district carries with it a one-year statute of limitations. In addition, plaintiff alleges a libel *per se* claim against Kenyon. The libel claim allegedly arose on or about February 8, 2008. <u>See id.</u>, ¶50.[6] Defendants argue that this claim also has a one-year statute of limitations. Plaintiff also alleges a First Amendment retaliation claim. However defendants maintain that plaintiff made no public statements or spoke out to the public with regard to his complaints. In addition, defendants argue plaintiff did not engage in any protected speech. He only alleges that he complained to the defendants directly.

**DISCUSSION**

I.      **Standards of Review**

A.      **Documents Properly Considered For this Motion**

As a threshold matter, the Court addresses its option to consider certain documents outside the pleadings and treat this motion as a motion to dismiss under Fed.R.Civ.P. 12(b)(6) or convert the motion to one for summary judgment under Fed.R.Civ.P. 56. Generally, "Rule 12(b) gives district courts two options when matters outside the pleadings are presented...the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment." <u>Kopec v. Coughlin</u>, 922 F.2d 152, 154-55 (2d Cir.1991) (quoting <u>Fonte v. Board</u>

---

[6]Defendants also point out that plaintiff admits that he failed to file a Notice of Claim. <u>See id.</u>, ¶6.

of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir.1988)) (internal quotation marks omitted); see also Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir.2000). Federal courts have complete discretion to determine whether or not to accept submission of any material beyond the pleadings offered in conjunction with a motion to dismiss, and thus complete discretion in determining whether to convert the motion to one for summary judgment. See Carione v. U.S., 368 F. Supp. 2d 186, 191 (E.D.N.Y.2005), reconsideration denied, 368 F. Supp. 2d 196 (E.D.N.Y.2005). The "mere attachment of affidavits or exhibits [however,]... is not sufficient to require conversion to a motion for summary judgment." See Salichs v. Tortorelli, 2004 WL 602784, at *1 (S.D.N.Y.2004) (citation omitted). Indeed, under Rule 12(b), the "complaint includes ...any statements or documents incorporated into it by reference." Paulemon v. Tobin, 30 F.3d 307, 308-09 (2d Cir.1994).

Moreover, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir.2002); see also Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 776 (2d Cir.2002); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir.1991); Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir.1993); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir.1991); VTech Holdings Ltd. v. Lucent Techs., Inc., 172 F.Supp.2d 435, 437 (S.D.N.Y.2001) (In deciding motion to

dismiss for failure to state claim, court may consider documents referenced in complaint and documents that are in plaintiff's possession or that plaintiff knew of and relied on in bringing suit); Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V., 451 F. Supp. 2d 585, 587 (S.D.N.Y.2006) (on a motion to dismiss, a court is entitled to consider the terms of any documents attached to or referenced in the complaint); Frontier-Kemper Constructors, Inc. v. American Rock Salt Co., 224 F. Supp. 2d 520, 525 (W.D.N.Y.2002) (Court's consideration of motion to dismiss for failure to state a claim is limited to the factual allegations in plaintiff's complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit). Thus, the Court may consider documents that are referenced in the Complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers, 282 F.3d at 153.[7]

---

[7]When deciding a motion to dismiss, the court's "review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." See McCarthy, 482 F.3d at 191; accord Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir.2006). Accordingly, there are circumstances under which it is appropriate for a court to consider documents outside of the complaint on a motion to dismiss. For example, documents that are integral to the complaint, are partially quoted in the complaint, or were relied upon by plaintiff in drafting the complaint may be properly considered on a motion to dismiss. See Faulkner, 463 F.3d at 134. The court may also consider on a motion to dismiss documents of which it may take judicial notice. See Kramer, 937 F.2d at 771; Muhammad v. NYCTA, 450 F.Supp.2d 198, 205 (E.D.N.Y. 2006) (plaintiff's EEOC charge and agency's determination are both public records, of which Court may take judicial notice); see also Moll v. Telesector Resources, 2005 WL 2405999, at *4 (W.D.N.Y.2005) (citing cases).

Here, the Court in the exercise of its discretion finds that it is unnecessary to convert this motion to dismiss into a motion for summary judgment. In addition, the Court finds that the Complaint (1) incorporates by reference the February 8, 2008 letter sent by the Director of Human Resources to plaintiff together with attachments; the e-mail exchanges between plaintiff and the School Superintendent, Dr. Ike on February 11, 2008, and the plaintiff's application for employment for his substitute teaching that he submitted to the District together with various other documents he attached; and (2) relies upon the terms of the EEOC charge made by the plaintiff dated May 12, 2008, alleging a violation of the ADEA and the September 19, 2008 EEOC dismissal of plaintiff's charges. In addition, the Court takes judicial notice of the District's response to the May 12, 2008 EEOC charges, including its attachments. Accordingly, for the reasons that follow, the Court will consider these matters in ruling on the instant motion.

First, the Complaint makes detailed reference to the February 8, 2008 letter as well as the e-mail exchanges between plaintiff and Dr. Ike and thereby incorporates that correspondence by reference into the Complaint. Paulemon, 30 F.3d at 308-9. Indeed, the whole basis of several causes of action in the Complaint is derived from the February 8, 2008 letter and resulting e-mail exchanges on February 11, 2008. See generally Complaint; Cortec Indus., Inc. v.

Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one [for summary judgment] under Rule 56 is largely dissipated").

Second, the Complaint relies on the EEOC charge dated May 12, 2008, alleging a violation of the ADEA and the September 19, 2008 EEOC dismissal of plaintiff's charges and thereby renders those documents integral to the complaint. The Complaint relies on these documents in framing plaintiff's ADEA and NYSHRL claims by alleging that plaintiff was discriminated against due to his age. See Com. ¶¶36-48; see also Gregory v. Daly, 243 F.3d 687, 691 (2d Cir.2001) (treating plaintiff's allegations in the affidavit submitted to the EEOC as an "integral part of her pleadings"). Thus, the Court finds that these documents attached to the affidavit in support of defendants' motion to dismiss were documents integral to the complaint and relied upon by plaintiff and as such were "documents that [plaintiff] either possessed or knew about and upon which [he] relied in bringing the suit." See Rothman v. Gregor, 220 F.3d 81, 99-89 (2d Cir.2000) (citations omitted). Accordingly, the Court will consider these documents for purposes of deciding this motion.

Finally, the Court takes judicial notice of the District's response to the May 12, 2008 EEOC charges. See In re Sterling Foster & Co., Inc., Sec. Litig., 222 F.Supp.2d 216, 253-54 (E.D.N.Y.2002)

(taking judicial notice of filings by a third-party in an arbitration proceeding against defendant where filing was a "public record"); Seneca Ins. Co. v. Wilcock, 2002 WL 1067828, at *2 (S.D.N.Y.2002) (taking judicial notice of "documents...that derive from [plaintiff's] New York State arbitration proceedings because they are matters of public record"); Evans v. New York Botanical Garden, 2002 WL 31002814, at *4 (S.D.N.Y.2002) (Court "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment"). Accordingly, the Court will considering the information contained in the District's response "not for its truth but...to establish the fact" of the EEOC proceeding. See In re Sterling Foster, 222 F.Supp.2d at 254.

## B. Motion to Dismiss Standards

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of the Complaint where the Court lacks subject matter jurisdiction over the dispute. With regard to the Rule 12(b)(1), it is well settled that,

> [a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings. A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.

See Makarova v. U.S., 201 F.3d 110, 113 (2d Cir.2000) (citations omitted). The notice of claim provisions at issue in this action are jurisdictional in nature. See Peek v. Williamsville Bd. of Educ., 221 A.D.2d 919, 920 (4th Dept.1995) ("The failure of plaintiff to file a timely notice of claim, or to apply within the statutory period for leave to file a late notice of claim, is jurisdictional and precludes his causes of action [.]") (citing, inter alia, Education Law § 3813[2] ).

A Rule 12(c) motion is decided under the same standard as a Rule 12(b)(6) motion. See Hayden v. Paterson, ---F.3d----, 2010 WL 308897, at *4 (2d Cir.2010), citing Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999), cert. denied, 531 U.S. 1052 (2000). To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ---U.S.-- -- 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Legal conclusions must be supported by factual allegations. See Iqbal, 129 S.Ct. at 1949. Pleadings that are "no more than conclusions[ ] are not entitled to the assumption of truth." Id. at 1950. The Supreme Court in Iqbal set out a "two-pronged" approach for courts considering a motion to dismiss. Id. at 1950.

First, the court accepts plaintiff's factual allegations as true and draws all reasonable inferences in his favor. See Iqbal, 129

S.Ct. at 1950; see also Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir.2008), cert. denied, 129 S.Ct. 1524 (2009). Second, the court determines whether the "well-pleaded factual allegations...plausibly give rise to an entitlement to relief." Iqbal, 129 S.Ct. at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949 (citing Twombly, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 557). In addition, "the Federal Rules do not contain a heightened pleading standard for employment discrimination suits." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002). Instead, Rule 8 requires only that a complaint "contain...a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed.R.Civ.P. 8(a)(2).

## II.  New York's Notice of Claim Requirements

Initially, defendants maintain that the Court lacks subject-matter jurisdiction over plaintiff's state-law claims, because plaintiff did not comply with the notice of claim requirements in Education Law §3813, subsections (1) and (2). Subsection (1) applies to plaintiff's NYSHRL claims, while subsection (2) applies to his tort-based claims.

14

## A.   New York State Human Rights Law Claim

Education Law §3813(1):

Employment discrimination claims that are brought against a school district, board of education, or officer of a school district, are subject to the notice of claim requirements contained in Education Law §3813(1). The statute states, in relevant part:

> No action or special proceeding, for any cause whatever... involving the rights or interests of any district or any such school shall be prosecuted or maintained against any school district, board of education, board of cooperative educational services, school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four or any officer of a school district, board of education, board of cooperative educational services, or school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.

Education Law §3813(1) (McKinney 2009) (emphasis added). "It is well settled that Education Law §3813(1) is a statutory condition precedent to a petitioner's bringing of a proceeding against a school district...and a petitioner's failure to comply is a fatal defect mandating dismissal of the action." Angarano v. Harrison Cent. Sch. Dist., 14 Misc.3d 1217, 2007 WL 102348 at *4 (N.Y.Sup.2007) (Lippman, J.) (citations omitted). Moreover, "[a]lthough substantial compliance

with the statute regarding the degree of descriptive detail in the notice of claim is sufficient, the statutory requirements mandating notification to the proper public official must be fulfilled." Id. at *5 (citations omitted). "The essential elements to be included in the notice are the nature of the claim, the time when, the place where and the manner in which the claim arose and, where an action in contract is involved, the monetary demand and some explanation of its computation." Parochial Bus Systems, Inc. v. Board of Educ. of City of New York, 60 N.Y.2d 539, 547 (1983) (citations omitted). Even if a notice contains sufficient information, it must still be "presented to the governing body of said district," and the failure to do so "is a fatal defect mandating dismissal of th[e] action." Id. at 548. "The statutory prerequisite is not satisfied by presentment to any other individual or body, and, moreover, the statute permits no exception regardless of whether the Board had actual knowledge of the claim or failed to demonstrate actual prejudice." Id. (emphasis added).

With respect to the text of §3813(1) set forth above, the instant case does not involve a board of cooperative educational services or a "school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four." Accordingly, in this action, §3813(1) only applies to those defendants which are a school district or who are an officer of a school district. Clearly, the Palmyra-Macedon Central School District fits within that definition. As for Kenyon and Dr. Ike, they

16

are not covered by §3813(1) unless they are "school officers." The term "school officer" is defined as follows:

> The term "school officer" means a clerk, collector, or treasurer of any school district; a trustee; a member of a board of education or other body in control of the schools by whatever name known in a union free school district, central school district, central high school district, or in a city school district; a superintendent of schools; a district superintendent; a supervisor of attendance or attendance officer; or other elective or appointive officer in a school district whose duties generally relate to the administration of affairs connected with the public school system.

Education Law §2(13) (McKinney 2009). Based upon this definition, it is obvious that Dr. Ike as the Superintendent is a school officer. Moreover, the Court finds that Kenyon also comes within this definition, since he holds the title of Director of Human Resources for the District. The Court therefore finds that plaintiff was required to comply with the notice and pleading requirements of §3813(1) with regard to his NYSHRL claims against the District, Kenyon and Dr. Ike.

Moreover, defendants contend that plaintiff failed to serve the notice required by §3813(1), and that the Court cannot now grant plaintiff leave to file a late notice, since the one-year limitations period for such claims has now passed. See Def. Br. at 4-5; see also Amorosi v. South Colonie Indep. Cent. Sch. Dist., 9 N.Y.3d 367 (2007). Plaintiff responds by stating that his EEOC complaint should be sufficient to satisfy the notice of claim requirement. See Pl. Br.

at 12. However, even assuming that plaintiff's EEOC complaint contained sufficient information to satisfy §3813(1), neither was served on the "governing body of [the] district," which is the Board of Education. Plaintiff does not allege service upon any of the appropriate authorities establishing compliance with Education Law §3813(1). See McCann v. State, 181 Misc.2d 284, 292 (N.Y.Ct.Cl., 1999). This failure to serve the appropriate body is fatal to plaintiff's NYSHRL claims against the District, Kenyon and Dr. Ike. Accordingly, the motion to dismiss for lack of subject matter jurisdiction for failure to comply with §3813(1) is granted as it relates to plaintiff's NYSHRL claims. The dismissal is granted without leave to amend, since it does not appear that plaintiff can cure this deficiency.[8]

### B.   Tort Claims

Pursuant to Education Law § 3813(2), tort claims against a school district, board of education, or employee of a school district, are subject to the notice-of-claim requirements in New York

---

[8]Plaintiff argues that his state law claims should not be dismissed for failure to file a notice of claim because plaintiff has filed a suit not only for a private interest but also for a public interest. See Pl. Opp. Br. at 11. However, it is clear from the pleadings that the public interest exception is inapplicable in this case. Moreover, plaintiff's reliance on Union Free Sch. Dist. No. 6 of the Town of Islip and Smithtown et al. v. New York State Human Rights Appeal Board et al., 35 N.Y.2d 371 is misplaced. The Union Free Sch. case involved a claim by the Division of Human Rights brought on behalf of a class of women injured by the school's maternity leave policy. The case law in this area leaves little doubt that simply claiming discrimination is not adequate to bring a claim within the public interest exception to the notice of claim filing requirements. See Biggers v. Brookhaven-Comsewogue Union Free Sch., 127 F.Supp.2d 452, 455 (S.D.N.Y.2001). Here, plaintiff does not seek relief on behalf of a class of persons, rather he seeks personal relief, which means the plaintiff's failure to file a notice of claim is a fatal defect that bars the state law claims.

General Municipal Law §§50-e and 50-i. Education Law §3813(2). In that regard, Section 50-e requires that a claimant prepare a written, sworn claim, describing the nature of the claim, the time and date the claim arose, and the items of damage or injuries sustained. Municipal Law §50-e(2). Section 50-e further directs that such notice must be served "within ninety days after the claim arises." Municipal Law §50-e(1)(a). The statute permits applications for late service of notice. However, at this date, any such application in the instant case would be untimely. <u>See</u> Municipal Law §50-e(5) ("The extension shall not exceed the time limited for the commencement of an action by the claimant").[9]

In addition, General Municipal Law §50-i imposes certain conditions that must be met before commencing an action or proceeding against a school district, board of education, or school district employee:

> No action or special proceeding shall be prosecuted or maintained ... unless, (a) a notice of claim shall have been made and served ... in compliance with section fifty-e

---

[9] This statutory limitation of the Court's power to extend the time to serve notice of claim divests the court of authority to grant an extension beyond the expiration of the statute of limitations for the claim. <u>See id.</u>; <u>Ximines v. George Wingate High Sch.</u>, 2006 WL 2086483, at *10 (E.D.N.Y. 2006) (Court denied plaintiff's motion for an extension to file notice of claim because "[n]o application for an extension of time was made ... until the filing of response papers ... more than one year after events took place that gave rise to plaintiff's cause of action"); <u>see also</u> <u>Lenz Hardware, Inc. v. Bd. of Educ.</u>, 24 A.D.3d 1278, 1280 (4th Dept. 2005) (Court affirmed denial of plaintiff's motion seeking extension of time to file a notice of claim because plaintiff "did not seek an extension until...well after expiration" of limitations period under § 3813(2-b), and thus court was without authority to grant motion); <u>Kingsley Arms, Inc. v. Copake-Taconic Hills Cent. Sch. Dist.</u>, 9 A.D.3d 696 (3d Dept. 2004). Here, no application for an extension of time was made to this Court until the filing of opposition papers to defendant's Rule 12(b)(6) and Rule 12(b)(1) motions, more than a one-year and ninety days after the events took place that gave rise to plaintiff's causes of action.

of this chapter, (b) it shall appear by and as an
allegation in the complaint or moving papers that at least
thirty days have elapsed since the service of such notice
and that adjustment or payment thereof has been neglected
or refused, and (c) the action or special proceeding shall
be commenced within one year and ninety days after the
happening of the event upon which the claim is based;
except that wrongful death actions shall be commenced
within two years after the happening of the death.

General Municipal Law §50-i(1) (McKinney 2009). In this case,

plaintiff is asserting libel and *prima facie* tort claims. However, it

is clear that plaintiff has not satisfied all of the notice of claim

requirements, since the Complaint does not allege that a notice was

served as required by Section 50-e, or that at least thirty days have

elapsed since the service of such notice and that adjustment or

payment thereof has been neglected or refused.

Plaintiff contends that his EEOC charges satisfies the notice of

claim requirements since it contains "sufficient information." See

Pl. Opp. Br. at 12. With respect to plaintiff's EEOC charge, even if

this Court concluded that the EEOC complaint constitutes a notice of

claim sufficient to put the defendants on notice of a state law

discrimination claim, which it does not (see Point II.A above), the

Court finds that the EEOC complaint could not satisfy the notice of

claim requirement with regard to the subject tort claims. The state

law claims alleged in plaintiff's Complaint were not identified in

his EEOC complaint/charge. See Rivera v. City of New York, 392

F.Supp.2d 644, 657 (S.D.N.Y.2005) ("claim of intentional infliction

of emotional distress...fails because [plaintiff] did not identify

20

this cause of action in his Notice of Claim"); see also O'Brien v. City of Syracuse, 54 N.Y.2d 353, 358 (1981) ("The test of the notice's sufficiency is whether it includes information sufficient to enable the city to investigate the claim") (citations omitted); Ingle v. New York City Transit Authority, 7 A.D.3d 574, 575 (2d Dept.2004) ("Whether the notice of claim substantially complies with the requirements of the statute depends on the circumstances of each case.") (citations omitted). Thus, defendants' motion to dismiss plaintiff's tort claims including the libel *per se* and the *prima facie* tort are dismissed without leave to amend, since it does not appear that plaintiff can cure this deficiency.[10]

### III. Plaintiff's ADEA Claim

The Second Circuit Court of Appeals has held that a plaintiff's ADEA claim is analyzed under the burden-shifting analysis first announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-149 (2000); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-511 (1993); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-256 (1981). The initial burden lies on the plaintiff. To establish a prima facie case of age discriminatory, "a plaintiff must show (1) that he was within the protected [age] group, (2) that he

---

[10]Assuming arguendo plaintiff had the ability to comply with the Notice of Claim requirements at this late stage, he has not however sought leave to amend the Complaint to plead compliance with the applicable statute. Further, the legal sufficiency of plaintiff's claims (liber *per se* and *prima facie* tort) are now moot. Accordingly, it is not necessary to address plaintiff's substantive arguments relating to those two causes of action.

was qualified for the position, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of [age] discrimination." Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir.2000) (internal quotation marks and citation omitted); see also McDonnell Douglas, 411 U.S. at 802 (stating the prima facie case more generally). Although the Second Circuit has stated that "the burden...that must be met...to establish a prima facie case is minimal," Hollander v. Am. Cyanamid Co., 172 F.3d 192, 199 (2d Cir.1999), it has also noted that "[a] jury cannot infer discrimination from thin air." Norton v. Sams Club, 145 F.3d 114 (2nd Cir.), cert. denied 119 S.Ct. 511 (1998).

Once a plaintiff has established a prima facie case of discrimination, the defendant must articulate a legitimate, nondiscriminatory rationale for its actions. See Burdine, 450 U.S. at 254. The burden then shifts to the plaintiff to demonstrate that the employer's stated rationale is merely a pretext for discrimination. See McDonnell-Douglas Corp., 411 U.S. at 802; see also St. Mary's Honor Ctr., 509 U.S. at 510-11; Reeves, 530 U.S. at 143.

**Plaintiff has failed to state a prima facie case of Age Discrimination**

Plaintiff's Complaint alleges that he is sixty-two years old with an extensive teaching and administrative background. In addition, the Complaint asserts that plaintiff was informed by the Director of Human Resources that he had not completed his application

for employment correctly and accordingly, the District would be unable to process his application for substitute teaching services. Taking plaintiff's factual allegations as true and drawing all reasonable inferences in his favor (see Iqbal, 129 S.Ct. at 1950), plaintiff has satisfied the first three elements that he was within the protected age group, that he was qualified for the position and arguably that an adverse employment action was taken against him. See McDonnell-Douglas Corp, 411 U.S. 792 at 802; Promisel v. First American Artificial Flowers, 943 F.2d 251, 259 (2d Cir. 1991), cert. denied, 502 U.S. 1060 (1992). However, plaintiff has failed to establish the fourth prong-that the discharge occurred under circumstances giving rise to an inference of age discrimination. See McDonnell-Douglas Corp, 411 U.S. 792 at 802.

In the instant case, plaintiff has failed to plead, let alone establish a *prima facie* case of discrimination because there are no circumstances alleged in his Complaint that can fairly be characterized as giving rise to an inference of age discrimination. There were no allegations by plaintiff that any member of the District made any discriminatory comments relating to his age. In addition, the Complaint does not allege that any member of the District engaged in any overt discriminatory conduct toward the plaintiff concerning plaintiff's age. Indeed, plaintiff's claims do not give rise to an inference of discriminatory intent because there are no allegations from which such an inference can be made. Further,

23

there are no allegations that other older applicants were denied appointments or that only younger workers are employed.[11] Accordingly, the allegations in the Complaint do not give rise to an inference of age discrimination. Because I find that plaintiff has failed to establish a *prima facie* case and state a claim for age discrimination, I grant defendant's motion to dismiss, and dismiss plaintiff's First Cause of Action with prejudice.[12]

### IV. **Plaintiff's Claims against Kenyon and Dr. Ike Individually**

Plaintiff contends that the claims against Kenyon and Dr. Ike individually should proceed since they are personally liable under NYSHRL. <u>See</u> Pl. Opp. Br. at 10. The Individual Defendants argue that this Court should decline to exercise jurisdiction over the NYSHRL claims. <u>See</u> Def. Reply Br. at 8. As this Court noted in <u>Donlon v. Board of Education of Greece Central Sch. Dist.</u>,

> The positions taken by the plaintiff and defendants do reflect a split among New York courts on the question of individual liability under the [NYS]HRL...Given that the New York courts are split on this issue, this Court declines to exercise supplemental jurisdiction over the state law claims....Furthermore, the presence of an individual defendant who could be liable under state law for conduct that would not give rise to liability under federal law will create practical difficulties at

---

[11]The Director of Human Resources indicates that the District has historically employed many persons without regard to age. A demographic report from the District shows that many of its employees are over the age of 50, 60 and even 70 years old.. <u>See</u> Affidavit of Paul W. Kenyon, ¶10.

[12]The principles governing discrimination claims under the ADEA and the NYSHRL are virtually identical, and as such both claims are evaluated using the same analytical framework. <u>See</u> <u>Abdu-Brisson v. Delta Airlines, Inc.</u>, 239 F.3d 456, 466 (2d Cir. 2001); <u>Richane v. Fairport Cent. Sch. Dist.</u>, 179 F.Supp.2d 81. 86 n.3 (W.D.N.Y.2001). Thus, even if plaintiff's NYSHRL claim satisfied that notice of claim requirement, it would still fail under the <u>McDonnell-Douglas Corp.</u> standard.

> trial....In addition, the risk of jury confusion is
> considerable....Thus, this Court declines to exercise
> supplemental jurisdiction over plaintiff's state law claim.
> (internal citations and quotations omitted).

See 2007 WL 4553932, at *5-6 (W.D.N.Y.2007). Accordingly, this Court declines to exercise supplemental jurisdiction over defendants Kenyon and Dr. Ike in their individual capacities.[13]

## V.     Plaintiff's First Amendment Retaliation Claim

The Court of Appeals has instructed that the elements of a First Amendment retaliation claim are dependent on the "factual context" of the case before the district court. See Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir.2008). For instance, a public employee who alleges First Amendment retaliation must allege the following: "(1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the adverse employment action." See Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir.2003) (internal quotation marks and citations omitted); see also Woodlock v. Orange Ulster B.O.C.E.S., 281 Fed.Appx. 66, 68, 2008

---

[13]The decision whether or not to exercise supplement jurisdiction under § 1367(c) involves considerations of judicial economy, convenience, comity and fairness to litigants. See Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir.1994). Further, the Supreme Court has noted that "there may be reasons independent of jurisdictional considerations, including the likelihood of jury confusion in treating divergent claims for relief, that would justify separating state and federal claims for trial. Fed.R.Civ.P. 42(b). See Ponticelli v. Zurich American Ins. Co., 16 F.Supp.2d 414, 439 (S.D.N.Y.1998); Houston v. National Fidelity Fin. Serv., 1997 WL 97839 *at 10 (S.D.N.Y.1997). The Court finds that the application of the NYSHRL to individuals constitutes a novel state law theory of liability that is improper for federal court resolution and accordingly, state claims against the individual defendants are dismissed.

WL 2415726 at *1 (2d Cir. 2008). A private citizen, on the other hand, must allege: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' action effectively chilled the exercise of his First Amendment right." See <u>Curley v. Vill. of Suffern</u>, 268 F.3d 65, 73 (2d Cir.2001).

In the normal course, a public employee is not required to show that his or her speech was actually chilled due to the defendant's retaliatory conduct because, in the employment context, the public employee usually suffers an adverse employment action--above and beyond chilling--that would demonstrate injury. See <u>Morrison v. Johnson</u>, 429 F.3d 48, 51 (2d Cir.2005) (public employee not required to allege actual chill in addition to adverse employment action); <u>Gill v. Pidlypchak</u>, 389 F.3d 379, 382 (2d Cir.2004) ("[I]t is well-settled that public employees alleging retaliation for engaging in protected speech are not normally required to demonstrate a chill subsequent to the adverse action taken against them.... [T]he employee's essential burden is to show that he or she was punished, not that his or her speech was 'effectively chilled' from that point forward."). Instead, it is sufficient if the "retaliatory conduct ... would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." See <u>Washington v. County of Rockland</u>, 373 F.3d 310, 320 (2d Cir.2004).

In contrast, where a private citizen claims First Amendment retaliation by a public official, the citizen is required to show that his or her speech was actually chilled; otherwise, the citizen would, in most instances, be unable to demonstrate any concrete harm. See Curley, 268 F.3d at 73 (actual chill required) (citing Singer v. Fulton Co. Sheriff, 63 F.3d 110, 120 (2d Cir.1995) (no chilling effect where speech continued following arrest). Defendants claim that plaintiff has failed to plead a cognizable cause of action for First Amendment retaliation under the public employee standard. See Def. Br. at 20. On the other hand, plaintiff argues that this Court should use the standard under Curley, which involves private citizens. See Pl. Opp. Br. at 20. Under the "factual context" of this case,[14] the Court finds that the allegations of the Complaint show that plaintiff is alleged to be a private citizen. See Com., ¶¶18-20. While plaintiff was a public employee for many years, at the time of the relevant events, he was still applying to be a substitute teacher and accordingly, was a private citizen. See id., ¶21.

The Court assumes for purposes of this motion to dismiss that plaintiff has satisfied the first and second elements of the First Amendment retaliation claim. Accordingly, the only issue for the Court to consider is whether plaintiff has alleged facts which satisfy the third element that defendants' action effectively chilled

[14] See Williams, 535 F.3d at 76.

the exercise of plaintiff's First Amendment rights. In order to meet the chilling requirement, plaintiff must prove that the retaliatory "official conduct actually deprived [him] of that right" by either (1) silencing [him] or (2) having some "actual, non-speculative chilling effect on [his] speech." See Williams, 535 F.3d at 78 (internal quotation marks omitted)(quoting Columbo v. O'Connell, 310 F.3d 115, 117 (2d Cir.2002)). Thus, "[w]here a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." See Curley, 268 F.3d at 73. In particular, "[t]he Supreme Court has held that 'allegations of a subjective "chill"' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." See id. (quoting Laird v. Tatum, 408 U.S. 1, 13-14 (1972)).

The Court finds that plaintiff has failed to sufficiently allege that defendants' alleged retaliatory conduct adversely affected plaintiff's constitutionally-protected expression. See Camacho v. Brandon, 317 F.3d 153, 163 n. 11 (2d Cir.2003) ("[N]ot every action taken in retaliation against a plaintiff's constitutionally protected activities will necessarily adversely affect those activities"). Plaintiff alleges that he informed the District on February 7, 2008 that if he did not hear from the District about his application, his next phone call was going to be directed to the Superintendent of Schools, if not the State Department of Education. See Com. ¶28. For purposes of this motion to dismiss, plaintiff's February 7 speech

28

will be considered as being "critical" of the District. On February 8, 2008 the plaintiff received Kenyon's letter advising him that the District would not be processing his application for specific reasons set forth therein, including plaintiff's failure to properly complete the employment application, failure to follow instructions, and his rude and menacing behavior towards the personnel clerk during the phone conversation the previous day. See id., ¶29. Further, plaintiff alleges that on February 11, 2008 he sent an e-mail to the Superintendent, Dr. Ike concerning his application that had not been processed, as well as complaining of the way applicants are treated. See id., ¶33; See Declaration of Frank W. Miller ("Miller Decl."), Ex. E. Moreover, plaintiff sent another letter to both Kenyon and Dr. Ike on February 22, 2008 concerning the same issues i.e. the February 8 letter and the February 11 e-mail correspondence. See id., Ex. F. Viewing the facts in the light most favorable to the plaintiff as required on a motion to dismiss, plaintiff does not allege facts that suggest that he was prevented from corresponding with defendants even after the February 8, 2008 letter. Indeed, he continued to communicate with and send letters/e-mails to the defendants in February 2008 after he received of the defendant's February 8 letter. Accordingly, there is no showing that defendants' retaliation against plaintiff actually chilled or silenced his speech. See Gill, 389 F.3d at 381 (actual chill is a requirement of a First Amendment claim involving private citizen's criticism of public officials); Curley,

29

268 F.3d at 73 (in context of private citizen criticizing public officials, plaintiff must show that protected speech was "actually chilled," i.e., that there was some change in plaintiff's behavior as a result of defendant's conduct). Accordingly, plaintiff's First Amendment retaliation claim is dismissed.

Further, assuming arguendo that plaintiff is considered a public employee, his First Amendment retaliation claim still fails to state a valid cause of action. As the Second Circuit recently emphasized, "[i]t is established law in this Circuit that, '[r]egardless of the factual context, we have required a plaintiff alleging retaliation to establish speech protected by the First Amendment.'" Sousa v. Roque, 578 F.3d 164, 169-70 (2d Cir.2009) (quoting Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir.2008)). More specifically, "[t]o determine whether or not a plaintiff's speech is protected, a court must begin by asking 'whether the employee spoke as a citizen on a matter of public concern.'" Sousa, 578 F.3d at 170 (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). It is critical to note that this test contains two separate requirements--namely, (1) that the employee speak as a citizen, and (2) that the employee speak on a matter of public concern.

If either of the above requirements are not met, then plaintiff's First Amendment retaliation claim must fail as a matter of law. See Sousa, 578 F.3d at 170 ("If the court determines that the plaintiff either did not speak as a citizen or did not speak on a

matter of public concern, 'the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.'") (quoting <u>Garcetti</u>, 547 U.S. at 418); <u>Benvenisti v. City of N.Y.</u>, 2006 WL 2777274, at *7 (S.D.N.Y.2006) ("First, the Court must determine whether the plaintiff was speaking as a 'citizen' for First Amendment purposes. After that, the Court must turn to the traditional [<u>Connick v. Myers</u>, 461 U.S. 138 (1983)] analysis and ask whether, viewing the record as a whole and based on the content, context, and form of a given statement, the plaintiff's speech was made as a citizen upon 'matters of public concern.'") (internal citations omitted).

Assuming for purposes of this motion that plaintiff was speaking as a citizen, the Court must determine whether plaintiff was speaking on a matter of public concern.[15] Viewing the facts and drawing all reasonable inferences in the light most favorable to the plaintiff, the Court finds that plaintiff's concerns related to an internal District matter as opposed to a matter of public concern. It is not alleged in the Complaint that plaintiff complained to parents or some outside third party regarding his concerns. In addition, plaintiff's alleged complaints focused on his own personal employment application rather than general complaints of the District's employment practices. See <u>Ezekwo v. New York City Health & Hospitals Corp.</u>, 940

---

[15]The inquiry as to whether the speech at issue relates to a matter of public concern is a question of law. <u>See Caraccilo v. The Village of Seneca Falls, N.Y.</u>, 582 F.Supp.2d 390, 412 (W.D.N.Y.2008) (stating that the issue is ultimately a matter of law) <u>Mulcahey v. Mulrenan</u>, 2008 WL 110949, at *4 (S.D.N.Y.2008) (following the guidance in <u>Connick v. Myers</u>, 461 U.S. 138, 148 n. 7 (1983), that "the inquiry into the protected status of speech is one of law, not fact").

F.2d 775, 781 (2d Cir.1991) (where complaints are "personal in nature" and "generally relate to [the employee's] own situation," the public concern requirement has not been satisfied).

Plaintiff's alleged complaints relate solely to matters of personal interest and are unrelated to matters of public interest i.e. the District's failure to respond to his employment application in a fashion as expeditiously as plaintiff would have liked. Moreover, there are no allegations in the complaint that the plaintiff complained to the State Department of Education prior to the District's determination concerning his employment application. In addition, as shown by the plaintiff's own allegations, he was informed of the District's determination to not process his application before he ever complained to the Superintendent.[16] Accordingly, plaintiff's speech does not fall within the ambit of First Amendment protection and his fourth cause of action, asserting

---

[16]Even if this Court were to assume for purposes of this motion to dismiss that plaintiff has satisfied the first and second prongs of the First Amendment retaliation claim and the only issue for the Court to consider is whether plaintiff has alleged facts which satisfy the third prong (that the speech was at least a substantial or motivating factor in the adverse employment action), plaintiff's claim would still fail. See Woodlock, 281 Fed.Appx. 66, 68. Based on the facts recited above, plaintiff's own allegations show that the District had already made its decision to not process plaintiff's application (i.e. take unemployment action adverse to plaintiff) before February 8, 2008. Indeed, there are no allegations by the plaintiff that the District was aware of any alleged constitutionally protected conduct by plaintiff. In addition, a review of the plaintiff's February 11, 2008 e-mail to Dr. Ike shows that there are no allegations of conduct by the plaintiff of a constitutionally protected nature prior to the District's determination to not process his application on February 7, 2008. See Com., ¶33; Miller Decl., Ex. E. As a result, the plaintiff does not establish, let alone plead, a situation where he was subject to an adverse employment action because of his involvement in a constitutionally protected activity. See Brady v. County of Suffolk, 657 F.Supp.2d 331, 354 (E.D.N.Y.2009) ("a plaintiff may not rely on conclusory assertions of retaliatory motive to satisfy the causal link") (citations omitted). Accordingly, plaintiff's First Amendment claim fails as a matter of law.

a violation of his First Amendment rights is dismissed with prejudice.[17]

## VI.  Punitive Damages Claim

Plaintiff argues that he is entitled to punitive damages against Kenyon and Dr. Ike. See Pl. Opp. Br. at 23. "Section 1983 imposes civil liability upon a party who 'under color [of law]... subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws....'" See Tornheim v. Eason, 175 Fed.Appx. 427, 429 (2d Cir.2006) (quoting Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268, 271 (2d Cir.1999), quoting 42 U.S.C. §1983. Having found no constitutional deprivation on the part of plaintiff by Kenyon and Dr. Ike (see Points III and V), plaintiff's punitive damages claim is thus denied as moot.

---

[17]Plaintiff has not requested leave to amend to add allegations to his Complaint relating to defendants' "chilling effect" on plaintiff's speech or that his speech was a matter of public concern. However, the decision to grant or deny leave to amend a complaint remains within the court's discretion. See Foman v. Davis, 371 U.S. 178, 182 (1962).  Plaintiff has not attempted in his opposition to make any valid arguments relating to the factual allegations contained in the Complaint to show a factual basis for alleging the "actually chilled" element. Further, a district court may deny leave to amend where such amendment would be futile. See Hom Sui Ching v. U.S., 298 F.3d 174, 180 (2d Cir.2002) (citing Jones v. N.Y. State Div. of Military & Naval Affairs, 166 F.3d 45, 50 (2d Cir.1999)). An amendment will be deemed futile, and the motion to amend denied, where the amendment would be subject to dismissal for failure to state a claim upon which relief may be granted. See Milanese and Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir.2003) ("leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss ..."). Here, I conclude that it would be futile to allow plaintiff to amend his Complaint with respect to the First Amendment Retaliation claim. Additional facts will not change the scenario set forth here. As stated in Point V, plaintiff cannot allege that his speech was "actually chilled," or that his speech were of matters of public concern and therefore any amendment would be futile.

## CONCLUSION

For the reasons set forth above, I grant the defendants' motion to dismiss the Complaint. In doing so, the court finds the following:

1)    the NYSHRL claim against the defendants (Second Cause of Action) is dismissed without leave to amend;

2)    Court declines to exercise supplemental jurisdiction over defendants Kenyon and Dr. Ike in the NYSHRL claim in their individual capacities;

3)    plaintiff's tort claims including the libel *per se* and the *prima facie* tort (Third Cause of Action) are dismissed without leave to amend;

4)    plaintiff's ADEA claim (First Cause of Action) is dismissed with prejudice;

5)    plaintiff's First Amendment retaliation claim (Fourth Cause of Action) is dismissed with prejudice;

6)    plaintiff's punitive damages claim (Fifth Cause of Action) is denied as moot;

7)    plaintiff's cross-motion pursuant to Rule 56(f) is denied as moot since defendants' motion to dismiss has been granted.

   **ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          February 11, 2010